**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ARMADA BULK CARRIERS, a Foreign Corporation, | ) )  ) | No. C-05-3406 SC |
| Plaintiff, | ) ) | |
| v. | ) ) | ORDER DENYING CONOCOPHILLIPS' |
| CONOCOPHILLIPS COMPANY, INC., a Delaware Corporation, FOSS MARITIME COMPANY, INC., a Washington Corporation, and FOSS MARITIME BARGE 185 P3, in rem, | ) ) ) ) ) ) | MOTION FOR SUMMARY JUDGMENT |
| Defendants. | ) ) | |

## I.   INTRODUCTION

Before the Court is a motion by Defendant ConocoPhillips Company, Inc. ("CP") for summary judgment on its counterclaim against Plaintiff Armada Bulk Carriers ("Armada") and on Armada's three claims against CP.  See Docket No. 68, Mot. for Summary J. Armada opposes the motion and asserts that there are several material factual disputes.  See Docket No. 72, Armada Opp'n. Defendant Foss Maritime Company, Inc. ("Foss") has not filed a response to Defendant CP's motion.

For the reasons stated herein, CP's motion for summary judgment is DENIED.

//

## II.  BACKGROUND

This case arises out of the sale and delivery of 550 metric tons of fuel oil (the "Fuel Oil").  See Docket No. 36, Second Amended Complaint ("SAC" or "Complaint"), ¶ 11.  According to the Complaint, Armada contracted with CP to have the Fuel Oil delivered to the M/V Spar Two (the "Vessel") between June 20 and 21, 2005, while the Vessel was afloat in the San Francisco Bay.  See id.  At the time of the delivery, Armada was the charterer of the Vessel.  See id. at ¶ 10.  CP retained Foss to transfer the Fuel Oil to the M/V Spar Two and Foss used the barge Foss 185 P3 to transport the Fuel Oil.  See id. at ¶¶ 14-15.

The gravamen of the allegations against CP and Foss is that when the Fuel Oil was delivered to the Vessel it was "heavily contaminated with excessive water, ash, silicon and aluminum." Id. at ¶ 21.  As a result, "Armada has been forced to incur substantial additional expenses relating to the fuel oil including, inter alia, in arranging for the disposal and replacement of the same, tank cleaning and other damages."  Id. (underline added).  Armada values its damages at no less than $189,906.73.  Id. at ¶ 23.

Though not discussed in the Complaint, it appears that Armada withheld payment to CP for the Fuel Oil.  See Docket No. 46, CP's Answer to SAC at ¶ 54.  Accordingly, CP filed a counterclaim against Armada for $189,906.73, the amount allegedly due for the

United States District Court
For the Northern District of California

1  Fuel Oil, plus interest.  See id. at ¶ 57.

2

3  **III.  LEGAL STANDARD**

4      This case falls within the Court's admiralty jurisdiction

5  under 28 U.S.C. § 1333(1) because it involves a maritime

6  transaction for the sale of potentially contaminated fuel

7  delivered to a vessel and a counterclaim to recover the unpaid

8  contract price for the fuel.  See Exxon Corporation v. Central

9  Gulf Lines, Inc., 500 U.S. 603, 612 ("lower courts should look to

10  the subject matter of the agency contract and determine whether

11  the services performed under the contract are maritime in

12  nature").  "In maritime commercial transactions, the Uniform

13  Commercial Code is taken as indicative of the federal common law

14  of admiralty."  Interpool Ltd. v. Char Yigh Marine (Panama) S.A.,

15  890 F.2d 1453, 1459 (9th Cir. 1989) (citing G. Gilmore and C.

16  Black, The Law of Admiralty, 718-22).

17      Summary judgment is appropriate only "if the pleadings,

18

19  depositions, answers to interrogatories, and admissions on file,

20  together with the affidavits, if any, show that there is no

21  genuine issue as to any material fact."  Celotex Corp. v. Catrett,

22  477 U.S. 317, 322 (1986).  A genuine issue of fact exists when the

23  non-moving party produces evidence on which a reasonable trier of

24  fact could find in its favor viewing the record as a whole in

25  light of the evidentiary burden the law places on that party.

26

27

28                                       3

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252-56 (1986). Summary judgment is therefore appropriate against a party "who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322-23.  The more implausible the claim or defense asserted by the opposing party, the more persuasive its evidence must be to avoid summary judgment, see Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), but "[t]he evidence of the non-moving party is to be believed, and all justifiable inferences are to be drawn in its favor."  Anderson, 477 U.S. at 255.

**IV.   DISCUSSION**

CP moves for summary judgment based on three lines of argument.  First, CP asserts that the fuel samples obtained by CP are binding on the parties and met all the relevant contract specifications.  See Mot. for Summary J. at 18.  Second, CP asserts that Armada cannot make a proper fuel quality claim because Armada failed to account for the three preceding deliveries to the Vessel, failed to account for the contents of Tank 1C, and failed to preserve a sealed barge sample.  See id. at 19-21.  Third, CP asserts that Armada cannot create a triable issue of fact that the Fuel Oil failed to meet contract specifications.  See id. at 21-24.

4

United States District Court

For the Northern District of California

In response to CP's first argument, Armada asserts that the samples upon which CP relies are manifestly in error.  <u>See</u> Armada Opp'n at 16.  CP states that the results of several tests performed by Columbia Inspection confirm that the Fuel Oil met contract specifications.  <u>See</u> Mot for Summary J. at 6.  First, on June 6, 2005, a composite sample test revealed levels of water, ash, silicon, and aluminum within the ISO 8217 and contract limits.  <u>See</u> Nassir Decl., ¶ 3, Ex. 2.  In addition, on June 20, 2005, Columbia Inspection returned and performed tests on both the shore tanks and tanks aboard the Foss barge which transported the oil from shore to the Vessel.  <u>See</u> <u>id.</u> at ¶¶ 6-9.  CP asserts that these samples also met ISO 8217 and contract specifications.  <u>See</u> Stillings Decl.

To counter CP's claims, Armada presented evidence from its expert, Mr. Grossey, and from the deposition of Mr. Nassir that CP's samples may not be representative of the Fuel Oil and that testing errors were made.  <u>See</u> <u>id.</u>; Grossey Decl.; Poulos Decl., Ex. 7. Because Armada has put forth the above listed facts, the Court finds there are material factual disputes as to whether CP's Fuel Oil samples met the contract specifications.

In response to CP's third argument, Armada asserts that it has raised a triable issue of fact regarding the quality of the Fuel Oil.  Armada presented evidence that testing of a "drip sample" taken from the Foss Barge indicated that the Fuel Oil was

1   contaminated and did not meet contract specifications.  See

2   Grossey Decl.; Poulos Decl., Exs. 5 and 6.  Though CP disputes

3   Aramada's evidence, Armada has succeeded in raising a genuine

4   factual issue as to the quality of the Fuel Oil.

5        Thus, Armada has indicated several factual disputes regarding

6   the quality of the Fuel Oil and whether proper testing procedures

7   were followed.  The Court finds Armada's showing sufficient to

8

9   preclude granting CP's motion for summary judgment.

10

11  **V.    CONCLUSION**

12       For the foregoing reasons, Defendant ConocoPhillips' Motion

13  for Summary Judgment is DENIED.

14

15       IT IS SO ORDERED.

16

17       Dated: May 1, 2007.

18                                        _____
                                          UNITED STATES DISTRICT JUDGE

19

20

21

22

23

24

25

26

27

28                                    6