1  STEPHEN THOMAS ERB (SBN 125248)
   STEPHEN THOMAS ERB, APC
2  11440 West Bernardo Court, Suite 204
   San Diego, California 92127
3  Telephone:   (858) 487-2728
   Facsimile:   (858) 487-5886
4  Email:   s.erb@erbapc.com

5  Attorney for Defendant and Counterclaimant
   ConocoPhillips Company
6

7                    UNITED STATES DISTRICT COURT
8                  NORTHERN DISTRICT OF CALIFORNIA
9

10 ARMADA BULK CARRIERS, LTD,          )  Case No. C 05-3406 SC
   a Foreign Corporation,              )
11                                     )
                Plaintiff,             )  **DEFENDANT & COUNTERCLAIMANT**
12                                     )  **CONOCOPHILLIPS COMPANY'S**
   v.                                  )  **TRIAL BRIEF REGARDING**
13                                     )  **CONTRACT TERMS**
   CONOCOPHILLIPS COMPANY, INC.,       )
14 a Delaware Corporation, FOSS        )
   MARITIME COMPANY, INC.,             )
15 a Washington Corporation; FOSS      )
   MARITIME BARGE 185 P3, *in rem*;    )  Trial:        May 7-11 and 21-22,
16 SPAR SHIPHOLDING, AS, a Foreign     )                2007
   Corporation; M/V SPAR TWO, *in rem* )
17                                     )  Judge:        Hon. Samuel Conti
                Defendants.            )
18 ─────────────────────────────────  )
                                       )
19 AND ALL RELATED COUNTERCLAIMS       )
20 ─────────────────────────────────  )

21      Defendant and Counterclaimant ConocoPhillips Company ("ConocoPhillips")

22 respectfully submits the following Trial Brief Regarding Contract Terms pursuant to the

23 Court's Order dated May 16, 2007.   (It is impossible to set forth the applicable

24 provisions and also stay strictly within the Court's five-page limitation.)

25      As explained following the close of evidence on May 22, 2007, the parties

26 agree that the ConocoPhillips "Products Purchase/Sale Agreement General Terms

27 and Conditions" ("GT&C") and the "Marine Fuels Purchase/Sale Addendum"

28 ("Marine Fuels Addendum") apply to this sale. *See* Pltf's Exh. 131/ Defd.'s Exh. D-

1  503 (GT&C) along with Pltf's Exh. 133/Defd's Exh. D-502 (Marine Fuels Addendum).

2  The GT&C provide, in pertinent part, as follows:

3  2.2 <u>FOB Delivery:</u>

4  Delivery shall be deemed complete and title and risk of
5  loss shall pass from Seller to Buyer... in the case of
   vessel deliveries as Product passes the vessel's
6  permanent flange at the load port.

7  4.   <u>PAYMENT.</u>

8  4.3 <u>Interest:</u>  Any amount payable for
   any cargo of Product or otherwise
9  payable by Buyer to Seller hereunder
   shall, if not paid when due, bear
10  interest from the due date ....at an
   annual rate (based on a 360-day
11  year) equal to the rate of two (2)
   percentage points above the prime
12  rate of interest....

13

14  10. <u>DEFAULT.</u>

15  10.3 ... The Non-Performing Party
   shall indemnify and hold the
16  Performing Party harmless from all
   costs and expenses (including
17  reasonable attorney fees) incurred in
   the exercise of any remedies
18  hereunder.

19

20  14. <u>INDEMNITY.</u>

21  14.1  Seller and Buyer mutually
   covenant to protect, defend,
   indemnify and hold each other
22  harmless... caused by, arising out of
   or resulting from the acts or
23  omissions of negligence or willful acts
   of such indemnifying Party, its
24  officers, employees or agents with
   respect to the purchase and sale of
25  Product hereunder. In the event the
   Parties are jointly and/or concurrently
26  negligent, each Party shall indemnify
   the other Party to the extent of its
27  negligent acts or omissions or willful
   acts.

28

The ConocoPhillips Marine Fuels Addendum provides at the outset:
.

> ConocoPhillips' Products Purchase/Sale General Terms and Conditions ("Seller's General Terms and Conditions") are incorporated by this reference.  In the event of a conflict between Seller's General Terms and Conditions and the following terms and conditions, the terms of the latter shall prevail.

Thus, as the more specific contract language relating to a defined subcategory of product sales, the Marine Fuels Addendum overrides inconsistent *general* terms and conditions:

The Marine Fuels Addendum continues as follows:

> 1.  <u>IDENTITY OF BUYER</u>.
>
> THIS SALE OF MARINE FUELS IS MADE TO THE NAMED VESSEL AND TO THE COMPANY OR PERSON DESCRIBED AS THE "BUYER" IN THE SALES CONFIRMATION WHO WARRANTS HAVING FULL AUTHORITY TO ACT ON BEHALF OF THE NAMED VESSEL.
>
> 6.  <u>SAMPLING AND QUALITY</u>.
>
> A. UNLESS A MUTUALLY ACCEPTABLE INDEPENDENT INSPECTOR IS APPOINTED TO TAKE SAMPLES (WHOSE FEES SHALL BE BORNE EQUALLY BY SELLER AND BUYER), SELLER SHALL TAKE NOT LESS THAN TWO (2) IDENTICAL SAMPLES ***IN ACCORDANCE WITH ITS NORMAL PROCEDURES AT THE DELIVERY PORT***.  (emphasis supplied)
>
> * * *
>
> BUYER HAS A RIGHT TO HAVE A REPRESENTATIVE WITNESS SUCH SAMPLING.
>
> ***B. BUYER WAIVES ANY OBJECTIONS TO THE SAMPLING PROCEDURES ACTUALLY EMPLOYED UNLESS BUYER HAD A REPRESENTATIVE WITNESS SAMPLING AND AT THE TIME OF DELIVERY GAVE SELLER A WRITTEN PROTEST ABOUT THE PROCEDURES.*** (emphasis supplied)

THE SAMPLES SHALL BE SEALED AND
LABELED BY EITHER THE BARGE COMPANY
REPRESENTATIVE, SELLER'S
REPRESENTATIVE OR INDEPENDENT
INSPECTOR, AS THE CASE MAY BE.  THE
CHIEF ENGINEER WILL ACKNOWLEDGE
RECEIPT OF THE SAMPLE DELIVERED TO THE
VESSEL BY SIGNING AND DATING EITHER A
RECEIPT OR THE SAMPLE LABEL.

C. ONE SAMPLE WILL BE GIVEN TO THE VESSEL
AT THE TIME OF DELIVERY. NOT LESS THAN
ONE (1) SAMPLE SHALL BE RETAINED BY
SELLER FOR AT LEAST 60 DAYS, OR LONGER
IF BUYER HAS MADE A QUALITY CLAIM
AGAINST SELLER DURING THAT PERIOD.

7. CLAIMS.

* * *

B. ANY CLAIM BY BUYER FOR QUALITY
DEFICIENCY OR NONCONFORMITY MUST BE
RECEIVED BY SELLER IN WRITING AND
ACCOMPANIED BY ALL THEN AVAILABLE
SUPPORTING DOCUMENTS WITHIN THIRTY
(30) DAYS OF DELIVERY.  IT IS A PRE-
CONDITION OF SELLER'S CONSIDERATION OF
A QUALITY CLAIM THAT AT THE TIME BUYER
GIVES SELLER NOTICE, THAT BUYER HAS
RETAINED ITS SEALED RETAIN SAMPLE
PROVIDED BY SELLER.  BUYER'S NOTICE
MUST CONTAIN FULL DETAILS INCLUDING:
THE QUANTITIES AND LOCATIONS OF ALL
BUNKERS ON BOARD THE VESSEL; THE RATE
AND QUANTITY OF CONSUMPTION OF
BUNKERS CONSUMED; FOR EACH OF THE
THREE (3) PRECEDING DELIVERIES TO THE
VESSEL, THE QUANTITY, QUALITY AND
SPECIFICATION OF PRODUCT SUPPLIED, THE
PLACE AND DATE OF SUPPLY AND THE NAME
OF THE SUPPLIER;  AND THE INFORMATION
CONCERNING THE WHEREABOUT OF
BUYER'S SEALED RETAIN SAMPLE.

* * *

D. IN THE EVENT OF A QUALITY CLAIM, THE
PARTIES AGREE TO HAVE THE SAMPLE
RETAINED BY SELLER ANALYZED BY A
MUTUALLY AGREED, QUALIFIED AND
INDEPENDENT LABORATORY.  THE COSTS OF
THE ANALYSIS SHALL BE BORNE EQUALLY BY
SELLER AND BUYER.  BUYER MAY CAUSE THE
TESTING OF THE SAMPLE PROVIDED TO THE

1      VESSEL AT ITS SOLE COST AND EXPENSE;
*HOWEVER, DISPOSITIVE DETERMINATION OF*
2      *QUALITY OF PRODUCT DELIVERED SHALL BE*
*BASED UPON TEST RESULTS OF AN*
3      *INDEPENDENT LABORATORY IN THE PORT OF*
*BUNKERING OF THE SEALED AND MARKED*
4      *SAMPLES RETAINED BY SELLER FROM THE*
*DELIVERY*. (emphasis supplied)

5

6                       * * *

7   **8. LIMITATION OF LIABILITY.**

8                       * * *

9      B.   CLAIMS RELATED TO FUEL QUALITY:
SELLER'S LIABILITY FOR DELIVERY OF
10     FUEL WITH NON-CONFORMING
SPECIFICATIONS SHALL BE LIMITED TO
11     THE COSTS INCURRED TO REMOVE THE
FUEL FROM THE VESSEL AND TO REPLACE
12     IT TO THE EXTENT SUCH FUEL WAS
DELIVERED UNDER THIS AGREEMENT.

13

14     C. SELLER SHALL NOT BE LIABLE FOR ANY
LOSS OF PROFIT OR ANTICIPATED PROFIT,
15     LOSS OF TIME OR HIRE, OVERHEAD
EXPENSES, DEMURRAGE OR LOSS OF
16     SCHEDULE, COST OF SUBSTITUTE
VESSEL(S), LOSS RELATED TO LOSS OF
17     OPERATIONAL USE OF VESSEL, PHYSICAL
LOSS OR DAMAGE (IN WHOLE OR IN PART)
18     OF OR TO VESSEL OR CARGO, OR FOR
ANY LOSS OF CONTRACT(S) OF
19     AFFREIGHTMENT TO THE EXTENT THAT
THE FOREGOING OF ANY OF THEM ARE
20     CONSEQUENTIAL, INDIRECT OR SPECIAL
LOSSES OR SPECIAL DAMAGES NOR
21     WITHOUT PREJUDICE TO THE FOREGOING
FOR ANY OTHER CONSEQUENTIAL,
22     INDIRECT SPECIAL LOSSES OR SPECIAL
DAMAGES, ARISING OUT OF OR IN ANY
23     WAY CONNECTED TO THIS AGREEMENT.

24       ConocoPhillips also contends, as Armada itself has consistently alleged in its

25  pleadings, that the Spot Sale Agreement dated June 14, 2005, as amended July 1,

26  2005, forms part of the contract.  *See* Defd's Exh. D-501.  Formal signatures are not

27  necessary.  *See* UCC 2-201(2), (3)(b)(c) as well as 1-201(39).  It is immaterial

28  whether the paperwork preceded or followed performance by ConocoPhillips, and

1   Armada did not call any witness with personal knowledge of the contract formation
2   process.  Given its own pleadings, it is unclear why Armada does not acknowledge
3   that the Spot Sale Agreement governs the transaction along with the other two
4   documents.  That three-page document plainly states the price, quantity, and grade,
5   which is RME25.  As Armada's own expert explained, RME25 and IFO 180 are
6   equivalent product classifications, and both allow viscosity to measure at any level
7   less than or equal to 225 centistokes at 50 degrees celsius.

8          Broker confirmations such as Plaintiff's Exhibits 1, 2, and 3 may be relevant
9   to show course of dealing and potentially to aid in interpretation, but they are not the
10  contract documents themselves.  None of the three documents were exchanged
11  directly between the principals, and the broker did not send precisely the same
12  confirmation to the two parties. *Compare* Pltf's Exh. 2 *with* Pltf's Exh. 3.

13         The ConocoPhillips "Marine Provisions" govern the transport of cargo, not
14  the sale of bunkers, and are inapplicable.  There is no evidence these provisions
15  were given to Armada in connection with this sales transaction.  Armada appears to
16  rely upon Marine Provisions Section X(1), which relates to *measurement* of product
17  *quantity* pursuant to API *Chapter 17*.  This has never been a claim over the *quantity*
18  of fuel oil delivered.  Only *Chapter 8,* not *Chapter 17,* standards were offered in
19  evidence by Armada.  There is no evidence of fraud or "manifest error" on the part of
20  Columbia Inspection or by either independent laboratory performing analyses of
21  shore tank or barge samples.

22                              Respectfully submitted,

23  Dated: May 23, 2007        STEPHEN THOMAS ERB, APC

24

25                                  */s/* Stephen Thomas Erb
                            By: _____
26                              Stephen Thomas Erb, Esq.
                              Attorney for Defendant &
27                              Counterclaimant
                              ConocoPhillips Company
28