1  **COX, WOOTTON, GRIFFIN,**
   **HANSEN & POULOS, LLP**
2  Gregory W. Poulos (SBN 131428)
   Christopher S. Kieliger (SBN 209121)
3  190 The Embarcadero
   San Francisco, CA  94105
4  Telephone No.: 415-438-4600
   Facsimile No.: 415-438-4601
5

6  Attorneys for Armada Bulk Carriers, LTD

7

8  ## UNITED STATES DISTRICT COURT

9  ## NORTHERN DISTRICT OF CALIFORNIA

| 10 | ARMADA BULK CARRIERS, LTD, a )<br>Foreign Corporation ) | Case No.:  C 05- 3406 SC |
|---|---|---|
| 11 | ) | |
| 12 | Plaintiff, ) | **ARMADA BULK CARRIERS,**<br>**LTD'S TRIAL BRIEF RE:** |
| 13 | v. ) | **CONTRACT TERMS** |
| 14 | ) | |
| 14 | CONOCOPHILLIPS COMPANY, INC., a )<br>Delaware Corporation, FOSS MARITIME ) | **TRIAL DATE: May 7, 2007**<br>**Time: 9:30 a.m.** |
| 15 | COMPANY, INC., a Washington ) | |
| 16 | Corporation, and FOSS MARITIME )<br>BARGE 185 P3, *in rem*, ) | **Hon. Judge Samuel Conti** |
| 17 | ) | |
| 18 | Defendants. )<br>_____ ) | |

19       Armada Bulk Carriers, Ltd. submits the following brief in response to the Court's

20  order dated May 16, 2007.

21       **A.     Contract Documents:**

22       Four documents form the contract at issue.  They are:

23       1.     Broker's Confirmation (Exhibit P-3 & Testimony of Richard Clark);

24       2.     CP General Terms and Conditions (Exhibit P-131 & Testimony of Richard

25  Clark, Peter Pecry and Owen Stillings);

26       3.     CP Marine Provisions (Exhibit P-132 incorporated by reference in

27  paragraphs 18.1 and 24.1 of the General Terms and Conditions).  These terms apply by

28  virtue of CP's General Terms and Conditions, ¶18 which states that the "Marine

COX, WOOTTON,
GRIFFIN, HANSEN
& POULOS, LLP
190 THE EMBARCADERO
SAN FRANCISCO, CA
94105
TEL: 415-438-4600
FAX: 415-438-4601

SKULD.SparTwo/2299

1

TRIAL BRIEF OF ARMADA BULK CARRIERS RE: CONTRACT TERMS

Case No. C 05-3406-SC

Provisions" apply "If delivery is to be made by water-borne transporation…" (P-131, ¶18; Testimony of Owen Stillings). While CP contends that these terms only apply to "cargo", the term "cargo" is defined in the Marine Provisions as "any products, gas liquids, atmospheric residuum, crude oil or condensate as described elsewhere in the Agreement." Fuel oil obviously fits within this definition.

    4.    CP Marine Fuels Purchase/Sale Addendum (Exhibit P-133 & Testimony of Richard Clark, Peter Pecry and Owen Stillings).

**B.    Contract Terms:**

The relevant contract terms are:

    1.    CP contracted to provide fuel oil meeting the specifications for IFO 180 / RME 25 Grade Fuel Oil. (P-3, P-131 ¶3.1; P-133, ¶¶3A, B & C; Testimony of Richard Clark and Owen Stillings). These specifications set specific limits on the amount of Aluminum, Silicon, Ash and Water.  Aluminum and silicon combined cannot exceed 80 ppm (or mg / kg), Ash cannot exceed 0.10% and Water cannot exceed 1.0%.  (Testimony of Richard Clark, Owen Stillings and Max Grossey).

    2.    Delivery was to be at the permanent flange of the receiving vessel, the SPAR TWO. (P-3; P-131, ¶2.3; Testimony of Richard Clark & Owen Stillings) (Mr. Stillings admitted that delivery point was at the flange of the SPAR TWO and relied also on defendant's exhibit D-501).

    3.    Sampling for determination of quality of the fuel oil was to be carried out "in accordance with [Seller's] normal sampling procedures at the delivery port." (P-133, ¶6A). CP's "normal sampling procedures at the delivery port" were to use an independent inspection company applying industry standards.  (P-169, response No. 9; Testimony of Owen Stillings).  Other contract terms specifically refer to the "American Petroleum Institute ("API") Manual of Petroleum Measurement Standards" which are the standards published by the ASTM.  (P-132, ¶X1)

COX, WOOTTON,
GRIFFIN, HANSEN
& POULOS, LLP

190 THE EMBARCADERO
SAN FRANCISCO, CA
94105
TEL: 415-438-4600
FAX: 415-438-4601

SKULD.SparTwo/2299

2

4.     The industry standards for sampling and testing are the ASTM standards. (P-131, ¶3.2; P-132, ¶X(1); P-110; Testimony of Owen Stillings and Max Grossey).

5.     CP was required to maintain a sealed sample of the product delivered, and the parties agreed that a *properly taken and sealed* sample would be used for determination of quality absent "manifest error." (P-133, ¶¶6A, 7D; P-131, ¶3.2; P-132, ¶X1)  Armada contends that the samples taken on the barge by Mr. Nassir were not properly taken or sealed and are not representative as required by the ASTM standards.  As such they cannot be used as binding samples in a quality dispute.  (D-536; Testimony of Max Grossey & Hussain Nassir)

6.     Armada was required to provide written notice to CP within 30 days of delivery including specific "then available" information.  (P-133, ¶7D; *See*, P-158, P-160, P-161).

7.     Federal Maritime Law and New York law govern.  (P-131, ¶11.1; P-133, ¶14).  The Federal Maritime Law applies the Uniform Commercial Code (U.C.C.) to commercial transactions. *Hozie v. The Vessel Highland Light*, 182 F.3d 925 (9th Cir. 1999).

8.     No terms or conditions of the contract can be amended orally or in writing unless the amendment was in writing and is signed by the other party.  (P-131, ¶21.1)

9.     In the event that fuel oil was delivered with "non-conforming specifications," CP agreed to "remove the fuel from the vessel and to replace it to the extent such fuel was delivered under this agreement."  (P-133, ¶8B).  Armada contends that CP lost the right to this limitation when it refused to remove the oil in San Francisco and Portland thereby creating a situation where the limited remedy provided in the contract "failed in its essential purpose" under the UCC. U.C.C. 2-719; *Cayuga Harvester, Inc. v. Allis-Chalmers Corporation*, 465 N.Y.S.2d 606, 611-12 (N.Y. App.Div., 1983); *Belfont Sales Corp.* v. *Gruen Industries Inc.*, 491 N.Y.S. 2d 652, 654-55 (N.Y. App. Div., 1985) (holding that a limited remedy may fail in its essential purpose if a buyer is forced to incur

COX, WOOTTON,
GRIFFIN, HANSEN
& POULOS, LLP
190 THE EMBARCADERO
SAN FRANCISCO, CA
94105
TEL: 415-438-4600
FAX: 415-438-4601

SKULD.Spa/Two/2259

3

Case No. C 05-3406-SC

large expenses in handling a defective product. (P-172; Testimony of Richard Clark, Peter Pecry, Owen Stillings).

10.     CP contracted to "protect, defend, indemnify and hold [Armada] harmless from and against any and all claims, demands, suits, losses, expenses (including without limitations, costs of defense, attorney's fees and interest), damages, fines, penalties, causes of action and liabilities of every type and character, including but not limited to personal injury or death to any person including employees of either Party or loss or damage to any personal or real property, caused by, arising out of or resulting from the acts or omissions of negligence or willful acts of such indemnifying Party, its officers, employees or agents with respect to the purchase and sale of Product hereunder." (P-131, ¶14.1).

11.     CP's terms limit the recovery of "indirect, special losses or special damages" or loss of profit. (P-133, ¶8C). Armada is not claiming indirect, special losses or special damages.  To the contrary, all of Armada's claimed damages are the direct and proximate result of CP's delivery of off-specification fuel oil to the vessel and the costs to store and later remove it after CP refused to comply with its obligation to "remove and replace" the fuel oil.  They thus fall under P-131, ¶14.1.

12.     Paragraphs 10.1 and 10.2 of the General Terms and Conditions (P-131) sets forth the rights of Armada in the event that CP failed to deliver the products ordered or breached a warranty.  The remedies in this provision are "in addtion to, and not in limitation or exclusion of, any other rights…[and includes] sale to a third party of the Product which is the subject of the Agreement."  The "Non-Performing Party shall indemnify and hold the Performing Party harmless from all costs and expenses (including reasonable attorney fees) incurred in the exercise of any remedies hereunder."

13.     Armada contends that the following U.C.C. provisions are applicable:

a.     UCC §1-106 (Remedies to be Liberally Administered);

b.     UCC §2-513 (Buyer's Right to Inspection of Goods)

COX, WOOTTON,
GRIFFIN, HANSEN
& POULOS, LLP

190 THE EMBARCADERO
SAN FRANCISCO, CA
94105
TEL: 415-438-4600
FAX: 415-438-4601

SKULD.SparTwo/2299

Case No. C 05-3406-SC

TRIAL BRIEF OF ARMADA BULK CARRIERS RE: CONTRACT TERMS

c.    UCC § 2-602 (Manner and Effect of Rightful Rejection and allowing rejection "within a reasonable time after their delivery or tender.");

d.    UCC §2-603 (Merchant Buyer's Duties as to Rightfully Rejected Goods)

e.    UCC § 2- 604 (Buyer's Options as to Salvage of Rightfully Rejected Goods);

f.    UCC §2 – 606 (What Constitutes Acceptance of Goods);

g.    UCC §2 – 607 (Effect of Acceptance);

h.    UCC §2 – 608 (Revocation of Acceptance in Whole or in Part);

i.    UCC §2 – 711 (Buyer's Remedies in General);

j.    UCC §2 – 712 (Cover; Buyer's Procurement of Substitute Goods);

k.    UCC §2-713 (Buyers Damages for Non-Delivery or Repudiation)

l.    UCC §2-714 (Buyers Damages for Breach in Regard to Accepted Goods) (Armada contends that it did not accept the goods, but if the Court finds that the oil was accepted, and that the acceptance was not revoked, then this section  may be applicable);

m.    UCC §2 – 715 (Buyer's Incidental and Consequential Damages)

n.    UCC §2 – 719 (Contractual Modification or Limitation of Remedy)

Dated: May 23, 2007          COX, WOOTTON, GRIFFIN,
HANSEN & POULOS, LLP
Attorneys for ARMADA BULK CARRIERS, LTD

By _____/S/_____
                    Gregory W. Poulos

COX, WOOTTON,
GRIFFIN, HANSEN
& POULOS, LLP

190 THE EMBARCADERO
SAN FRANCISCO, CA
94105
TEL: 415-438-4600
FAX: 415-438-4601

SKULD.SpotTwo/2299

5

Case No. C 05-3406-SC

TRIAL BRIEF OF ARMADA BULK CARRIERS RE: CONTRACT TERMS